```
                  UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF TENNESSEE
                       NASHVILLE DIVISION
```

| | |
|---|---|
| COREY ALAN BENNETT #509793, ) | |
| ) | |
| Plaintiff ) | |
| ) | No. 3:15-0937 |
| v. ) | Senior Judge Haynes/Brown |
| ) | **Jury Demand** |
| WARDEN BRUCE WESTBROOKS, *et al.*, ) | |
| ) | |
| Defendants ) | |

**TO: THE HONORABLE WILLIAM J. HAYNES, JR.**

### REPORT AND RECOMMENDATION

For the reasons stated below, the Magistrate Judge recommends that this case be dismissed with prejudice and that the Plaintiff's motion that the Court order him transferred to the Lois DeBerry Special Needs Prison (Docket Entry 46) be denied, but despite the denial of the motion to transfer, that the Court recommend that Warden Westbrooks institute the mental health evaluation and treatment outlined in the State's response to the motion to transfer (Docket Entry 53).

### BACKGROUND

This complaint is one of well over thirty complaints the Plaintiff has filed against various employees and officials of the Tennessee Department of Corrections over the years. In his complaint (Docket Entry 1) the Plaintiff alleged Warden Westbrooks and 24 other individuals allowed a named inmate to rape him on a daily basis and that the Defendants had subjected him to numerous beatings, and as a result he had 22 stitches in his head, a broken collar bone, a broken jaw, two black eyes, seven stitches behind his ear, a broken left arm, was transported to Vanderbilt Hospital, and spent four days in

intensive care. He alleges that when he was released from Vanderbilt he was again beaten and raped by the inmate and was told that it would continue until he dismissed his lawsuit.

On initial review the Court directed that only Warden Westbrooks be served, and the matter was referred to the undersigned to conduct a hearing where the Plaintiff and Warden Westbrooks or his representative would appear, and that Warden Westbrooks was to bring for the Court's inspection all medical records and transport records relating to the Plaintiff for the preceding six months.

The undersigned was further directed to make a determination of whether service of process should be entered as to any remaining Defendants and to consider whether the matter should be referred to the United States Attorney to investigate possible criminal action against the Plaintiff under 18 U.S.C. § 1623 for false material declarations while under oath in any proceedings before federal court (Docket Entry 5).

Pursuant to this directive, the undersigned conducted a hearing in this matter on December 17, 2015. A transcript of the proceedings is filed as Docket Entry 50. Before the hearing transcript was filed, the Plaintiff filed a motion for injunctive relief and a motion for a fast and speedy ruling (Docket Entry 32); a motion to voluntarily dismiss this case (Docket Entry 40); and a motion to order the Plaintiff be transferred to DeBerry Special Needs Facility (Docket Entry 46).

The Magistrate Judge submitted a report and recommendation (Docket Entry 42) recommending that the motion for a preliminary injunction and a fast and speedy trial (Docket Entry 32) be denied.

2

At the hearing, the State submitted the Plaintiff's medical records and his transport records (Defendants' Exhibits 1 and 2) along with an extensive report by the TBI of an investigation of allegations the Plaintiff made against a physician employed by a provider of medical services at Riverbend Maximum Security Prison where the Plaintiff was incarcerated (Exhibit 3). A review of the Plaintiff's medical records (Defendants' Exhibit 2 at the hearing) showed that the Plaintiff had not been treated for the injuries he claimed at Vanderbilt, and an examination of the transport records (Exhibit 1 at the hearing) established there were no transport records showing his transportation to Vanderbilt or any other medical facility. The TBI investigation (Defendants' Exhibit 3) found the report of misconduct by the physician was unfounded.

At the hearing, Warden Westbrooks testified concerning his dealings with the Plaintiff and specifically denied all of the allegations against him and the other individuals. He stated unequivocally that the Plaintiff had never been transported from Riverbend to Vanderbilt Medical Hospital. He explained the plaintiff was kept in a single cell under 24-hour camera surveillance for his own protection and for the protection of the staff given the allegations the Plaintiff made in his lawsuits. He explained the Plaintiff could not be put in general population because he had made enemies of both black and white gangs. The Plaintiff had no questions of the Warden (Docket Entry 50, trans. pp. 7-11).

The Magistrate Judge pointed out to the Plaintiff some of the allegations that he had made in his earlier lawsuits about broken bones and advised him that this was his opportunity to say what he had

3

to support his various claims (Docket Entry 50, pp. 12-13). The Plaintiff advised that despite this advice he did not want to ask the Warden any questions. He stated that he had mental health problems and that when he got frustrated he coped with his frustrations by filing frivolous lawsuits.

He stated he was trying to do better. He admitted he had not been transported to Vanderbilt and stated he was never going to file another complaint in the court. He was asked if he understood the seriousness of filing a lawsuit in which he swore that these things occurred and the serious consequences that this had on the individuals he sued, the expense to the State in defending those claims, as well as the Court's time in attempting to resolve the matters. He advised that he was aware of the consequences and that knew he was simply getting himself deeper and deeper in a hole with his frivolous lawsuits. (Docket Entry 50, Trans. 13-15).

The undersigned discussed with the Warden and the Plaintiff the possibility of a recommendation that the Plaintiff be transferred to DeBerry Special Needs for mental treatment. The Warden thought at the time of the hearing that a transfer to DeBerry would be in order (Docket Entry 50, Trans. 17-21).

Following this hearing, the Plaintiff filed a motion for the Court to order his transfer to DeBerry (Docket Entry 46). The State has now responded to that motion (Docket Entry 53) in which it points out new developments that for practical reasons make a transfer to DeBerry inappropriate at the present time. The State pointed out in its response that since the hearing the Plaintiff had scratched threats on his cell wall and sent a letter stating that he had been cooperating

4

with numerous high-ranking members of the vice lords to have them kill the Assistant Department of Corrections Commissioner and his family. The State further pointed out it learned the Plaintiff has previously threatened and committed a physical assault on a female doctor who would be responsible for overseeing his care at DeBerry. The State believes that it would be ill-advised to move the Plaintiff to any other facility at the present time.

The State does, however, propose that the Department provide the Plaintiff with a thorough mental health evaluation that would be conducted at his current institution by the Director of Psychiatry for Corizon, the prison's mental health service provider. This physician has not had any previous contact with the Plaintiff and has not been involved in his treatment. The evaluation would be kept in the Plaintiff's mental health records. The State commits that after this evaluation the Department would continue to adjust the Plaintiff's mental health treatment consistent with the evaluation and recommendations, and adjustments would be made as needed concerning the Plaintiff's placement at the appropriate correctional institution.

## LEGAL DISCUSSION

At the hearing the Plaintiff admitted that his complaints in his various lawsuits are not true, that he has not been injured as alleged, and that he files his lawsuits out of frustration. The Magistrate Judge is satisfied that, while the Plaintiff has mental health problems, the Plaintiff understood the consequences of what he was saying. It is clear form the record that the Plaintiff's allegations against all of the Defendants in this case are false and the case should be dismissed as frivolous.

5

The Plaintiff in his motion for a transfer to DeBerry has cited an order by the this Court in the case of *Dunn v. Killingsworth*, 1:13-114, directing that the plaintiff in that case be transferred to DeBerry for mental health treatment (1:13-114, Docket Entry 135). The undersigned has serious doubts, given the fact that the Plaintiff admits that his claims in this case are frivolous and are therefore subject to immediate dismissal, that the Court retains jurisdiction to order the Department of Corrections to make such a transfer, particularly given the more recent opinion of the Sixth Circuit in *Hearing v. Sliwowski*, 806 F.3d 864 (6th Cir. 2015). Nevertheless, the Magistrate Judge believes that in the order of dismissal it would be appropriate for the Court to recommend that the State adopt the program suggested in its response (Docket Entry 53).

**RECOMMENDATION**

Accordingly, the Magistrate Judge recommends that the Plaintiff's motion for an order transferring him to DeBerry Special Needs Facility (Docket Entry 46) be denied, that this case be dismissed as frivolous, acceptance and adoption of this Report and Recommendation ("R&R") constitute the final judgment in this action, that any appeal not be certified as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), and that dismissal of this action count as a strike under 28 U.S.C. § 1915(g).[1] However, the Magistrate Judge also recommends that in its order of dismissal the Court recommend that the State carry

---

[1] As was previously noted by the District Judge, the Plaintiff has already "filed at least three civil lawsuits that were subsequently dismissed as frivolous or for failure to state a claim." (Docket Entry 5).

6

out the program outlined in its response (Docket Entry 53) and that all other motions be terminated as moot.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this R&R in which to file any written objections to this R&R with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this R&R in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this R&R can constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

**ENTERED** this 29th day of January, 2016.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge

7